**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CPaT GLOBAL LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **ARCH INSURANCE COMPANY,** | § | |
| | § | **CIVIL ACTION NO. 4:19-cv-4175** |
| **DEFENDANT.** | § | |

## ORIGINAL COMPLAINT

CPaT Global, LLC ("CPaT") files this its Original Complaint against Arch Insurance Company ("Arch") for failing properly to pay the covered defense and indemnity costs the under Directors, Officers, & Organization Liability Coverage and Employment Practices Liability Coverage Parts in policy no. PCD9303048-00 (the "Policy"), failing to comply with the Texas Insurance Code while handling CPaT's claims, and violating the Texas Deceptive Trade Practices Act.  In support of the relief requested, CPaT would respectfully show the Court the following:

### I.
### PARTIES

1.    Plaintiff CPaT is a Texas limited liability company; as a result, CPaT is a resident of Texas for jurisdictional purposes.  *See Bomhoff v. Allstate Texas Lloyd*, Civil Action No. C-10-303, 2011 WL 2078534, at *1 (S.D. Tex. May 26, 2011).

2.    Defendant Arch Insurance Company is a Missouri corporation with its principal place of business in Missouri.  As a result, this carrier is not a resident of Texas

for jurisdictional purposes.  *See Bomhoff*, 2011 WL 2078534, at *1.  Arch may be served through its registered agent, CSC-Lawyers Incorporating Service Company, located at 221 Bolivar Street, Jefferson City, Missouri 65101, or wherever it may be found.

## II.
### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the suit is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.   In the prior state court proceeding, CPaT incurred over $419,443.48 in defense costs through October 2019. The liability limit under the Policy is $1 million with an additional $500,000.00 limit of liability for claims against Insured Persons.  CPaT made a formal demand that Arch pay covered defense costs owed under the Policy.  The current amount owed is $354,646.02 based on the proper allocation required by the Policy.  Courts consider such demands and policy limits when determining whether the "amount in controversy" requirement is satisfied.  *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (amount in controversy determination includes policy limits and potential damages).  Thus, the minimum jurisdictional limit exists in this case.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Policy that is the subject of this action was issued to CPaT in this District, and all of the events made the basis of the underlying state court action against CPaT occurred in this District.  Further, the lawsuit against CPaT, for which CPaT has demanded payment of defense and indemnity costs, is pending in this District.

2

### III.
#### FACTUAL BACKGROUND

5.      Arch issued Directors, Officers, & Organization Liability Coverage and Employment Practices Liability Coverage under the Policy to CPaT effective March 2, 2016, to March 2, 201, that imposed a duty to reimburse CPaT for defense costs with a $1 million limit and an additional $500,000.00 limit of liability for claims against Insured Persons.

6.      On or about January 6, 2017, Mr. Brent A. Birdwell filed breach of contract and related claims for purported wrongful termination against CPaT in the case styled *Brent A. Birdwell v. CPAT Global, LLC*, Cause No. 2017-01186, in the 189th Judicial District Court of Harris County, Texas (the "Underlying Action").

7.      Arch acknowledges that CPaT timely reported this claim on or about January 12, 2017.

8.      CPaT timely requested that another carrier, Hanover Insurance Group, and Arch reimburse its defense costs.

9.      Hanover Insurance Group and Arch reached an agreement to split and pay covered defense costs.

10.     CPaT sent Hanover Insurance Group invoices for its defense costs until that carrier had exhausted its limits.  As a result, Arch was responsible to reimburse CPaT for all subsequent covered defense costs.

11.     On or about August 7, 2018, CPaT sent Arch Invoice Nos. 164360, 165147, 171763, 169182, 171472, 174213, 177041, and 179007 for services rendered from

3

December 2016 through June 25, 2018, and notified Arch that "[g]oing forward, each quarter [we] will email you an invoice as well."

12.     On or about January 10, 2019, Arch sent correspondence to CPaT accepting "coverage for certain specified allegations" subject to exceptions and reservation of rights.

13.     On or about February 12, 2019, CPaT tendered Invoice Nos. 177041A, 177042A, 179007A, 181445A, 183626, 184559, 181617, and 185588 for its attorneys' fees incurred in December 2017, January through December 2018, and January 2019 to incorporate hourly rates agreed upon by Arch.

14.     On or about February 21, 2019, Arch requested five separate invoices (Invoice Nos. 165147, 165147, 171763, 169182, 171142, and 174213).

15.     On or about February 22, 2019, CPaT re-sent to Arch the requested invoices for January through December 2017 (Invoice Nos. 165147, 171763, 169182, 171472, and 174213), which previously had been sent on August 7, 2018.

16.     On or about February 28, 2019, and again on March 4, 2019, CPaT sent Arch Invoice No. 186251 for services rendered in January and February 2019.

17.     On March 6, 2019, Arch sent a letter to CPaT explaining its coverage position as well as the proposed allocation of CPaT's defense costs.  In that letter, Arch calculated what it believed to be covered Defense Costs, as defined by the Policy, based on agreed hourly rates and its assessment of the number of covered claims in the initial and amended pleadings filed in the Underlying Lawsuit "based on the version of the

petition that was operative at the time Defense Costs were incurred." This allocation is inconsistent with the governing language in Endorsement 9 to the Policy to determine covered Defense Costs.

18.     In its March 6, 2019 letter, Arch further specifically agreed to reimburse "the amount of $98,612.39 for past Defense Costs, to be paid within 30 days." However, Arch failed to pay the promised amount within 30 days of its March 6, 2019 letter.

19.     When Arch refused to honor its contractual and statutory obligations, CPaT engaged its counsel of record, who proceeded to demand compliance with the Texas Insurance Code and Arch's obligations under the Policy.

20.     On April 25, 2019, CPaT's counsel sent a letter to Arch explaining in detail the factual and legal basis for Arch's duty to reimburse CPaT for 88% of the unreimbursed defense costs.

21.     That letter also alerts Arch that the allocation formula used in its March 6, 2019 letter was incorrect because the Policy states in Endorsement 9 that defense costs must "be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties" where there is a Claim including both covered and uncovered matters. Applying the proper formula, based on the evaluation of the relative legal exposure by retained defense counsel, CPaT made demand that "close to 90% of defense costs is properly allocated to Arch based on the relative legal exposure." CPaT also provided a written evaluation by retained defense counsel explaining its demand for reimbursement of 88% of defense costs based on this exposure assessment by claim. To

5

date, Arch has failed to respond to this calculated allocation based on relative legal exposure, nor has Arch paid incurred defense costs on this basis.

22.     In the April 25, 2019 demand letter, CPaT further made demand that Arch promptly pay the admittedly "agreed amount owed" of $98,612.39.   Arch failed to comply with its March 6, 2019 promise to pay that amount within 30 days of that date.

23.     On or about April 26, 2019, CPaT sent Arch Invoice No. 187443 for services rendered in March and April 2019.

24.     On May 10, 2019, CPaT's counsel reiterated the demand that Arch pay the past "total amount owed" as specified in its internal analysis of the defense costs and acknowledge the protocol/methodology specified in the April 25, 2019 letter for calculating the proper contractual allocation of defense costs.

25.     On May 16, 2019, Arch agreed to explain the basis for any disagreement regarding the analysis in the April 25, 2019 letter that Endorsement 9 and an allocation based on relative legal exposure controls the proper allocation of covered defense costs. Arch also agreed to respond substantively to the April 25, 2019 allocation demand.  Arch has failed to respond as promised to this date.

26.     On or about May 30, 2019, CPaT sent Arch Invoice No. 188517 for services rendered in April and May 2019.

27.     On or about June 5, 2019, CPaT's counsel forwarded invoices to Arch and answered all prior billing questions raised by Arch.

28.     On June 28, 2019, CPaT reiterated its demand for a formal response to the April 25, 2019 demand letter.  Arch has not done so to date.

29.     On or about June 28, 2019, CPaT also re-sent Arch Invoice No. 188517 for services rendered in April and May 2019.

30.     On July 9, 2019, Arch acknowledged the June 28, 2019 demand letter and confirmed finally that "relative legal exposure" is the proper allocation methodology but disputed a "proper allocation ratio."  Despite demands, however, Arch to date has not specified what it considers a "proper allocation ratio," nor has Arch explained the basis for any such ratio based on any alternative relative legal exposure analysis.  Furthermore, despite conceding that the basis for the allocation in its March 6, 2019 letter was incorrect, Arch has failed to pay invoiced defense costs consistent with any relative legal exposure analysis.

31.     On July 16, 2019, Arch confirmed its agreement that the proper metric to determine reimbursable defense costs is the relative legal exposure and acknowledged receipt of defense counsel's report that was the basis for the April 25, 2019 demand. Arch also agreed to send a counteroffer and an explanation of any dispute with the analysis of defense counsel within ten days.  At CPaT's request, Arch further agreed that the response with its proposed allocation ratio would include documentation regarding the person or persons responsible for the proposed defense cost allocation based on relative legal exposure and the basis for its calculated analysis of relative legal exposure. No such counteroffer or response has been received by CPaT to this date.

7

32.     On or about August 2, 2019, CPaT sent Arch Invoice No. 187283 for services rendered in February and March 2019.

33.     On or about August 5, 2019, CPaT sent Arch Invoice No. 190664 for services rendered in July and August 2019.

34.     On August 13, 2019, Arch again promised that its proposed allocation counter-proposal would be forthcoming shortly.   Again, Arch has not sent any such counteroffer or the basis for any other allocation based on relative legal exposure to date.

35.     On August 21, 2019, CPaT finally received a wire transfer of $114,273.54 from Arch for the undisputed amount of defense costs.  This reimbursement was based on the incorrect allocation formula contained in Arch's March 6, 2019 letter.  Arch has failed to reimburse CPaT for any other defense costs incurred to date.

36.     On September 10, 2019, CPaT again demanded that Arch comply with its contractual obligations and the Texas Prompt Payment Claims Act.   Arch never responded to this demand; never made the promised counteroffer; and never reimbursed any defense costs based on the governing formula in Endorsement 9.

37.     On or about September 27, 2019, CPaT sent Arch Invoice No. 191728 for services rendered in August and September 2019.

38.     On September 10, 2019, at 2:35 p.m., shortly before the scheduled trial, CPaT received a settlement offer from the Plaintiffs in the Underlying Action and countered later that afternoon.

39.     On September 11, 2019, at 7:45 a.m., less than 24 hours later, CPaT notified Arch of the receipt of the settlement offer and delivery of the counteroffer.  CPaT notified Arch of the settlement negotiations as soon as reasonably possible.   The settlement was promptly reported to Arch.  That settlement was reasonable.  Furthermore, Arch was not prejudiced by the timing of the notice or the settlement.

40.     Arch chose not to participate in the Underlying Action in any way, settlement or otherwise.

41.     On or about October 15, 2019, CPaT sent Arch Invoice No. 192482 for services rendered in September and October 2019.

42.     As of the date of this filing, Arch has not reimbursed CPaT for any defense costs other than the August 12, 2019 wire transfer of $114,273.54.  Furthermore, Arch has not made a single payment of defense costs based on the allocation formula required by Endorsement 9, despite acknowledging that this is the proper formula to determine the contractual allocation of unpaid defense costs.  Arch also has failed to meet its indemnity obligations under the Policy for the settlement of the Underlying Action.

**IV.**
**CHOICE OF LAW**

43.     Texas law applies to resolve the coverage issues because Arch issued the Policy to CPaT, then a citizen and inhabitant of Texas, and Arch is authorized to and is doing business in Texas.  *See Millis Dev. & Const., Inc. v. America First Lloyd's Ins. Co.*, Civil Action No. H-10-3260, 2011 WL 3567331, at *7 (S.D. Tex. Aug. 12, 2011).  Under Texas law, the "complaint allegation rule" or the "eight corners rule" applies to determine

9

whether a carrier has to pay for defense costs against claims asserted against an insured. *See, e.g.*, *Star-Tex Resources, L.L.C. v. Granite State Ins. Co.*, 553 Fed. App'x 366, 369 (5th Cir. 2014); *Ace American Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839–40 (5th Cir. 2012).

## V.
## THE UNDERLYING ACTION

44.     On or about January 6, 2017, Mr. Birdwell filed his Original Petition against CPaT, alleging constructive termination without cause.  (Orig. Pet. ¶¶ 7–26).  He further asserted that the purported constructive termination resulted in a breach of an alleged employment agreement.  (*Id.* at ¶¶ 28–31).

45.     On June 13, 2017, Mr. Birdwell amended his petition to include claims against managers and/or officers of CPaT, Robert M. Shuford and Christopher E. Joseph; additional entities (CPaT Investment Co. and Clovis Point Capital Holdings, L.P.); and added Sky Harbor Investments, LLC ("Sky Harbor") as a plaintiff.  In the First Amended Petition, Mr. Birdwell and Sky Harbor brought claims for violation of Texas Business Organizations Code Section 11.314, derivative claims, breach of purported employment agreement, and constructive termination.

46.     On or about February 9, 2018, Mr. Birdwell and Sky Harbor filed their Second Amended Petition adding as "managing members" and/or officers of CPaT, Mr. Felix Shuford and Russell Joseph.   In the Second, Third, Fourth, Fifth, and Sixth Amended Petitions, Mr. Birdwell and Sky Harbor added claims for breach of a limited liability company agreement, claims for declaratory relief for breach of fiduciary

duty, negligent misrepresentation, intentional infliction of emotional distress, fraudulent inducement, statutory fraud under Tex. Bus. & Comm. Code 27.01, and conspiracy to breach fiduciary duties.

47.     The final pleading in the Underlying Action is Plaintiff's Seventh Amended Petition filed September 9, 2019.  In that pleading, Mr. Birdwell and Sky Harbor allege that CPaT along with its managers, "managing member," and/or officers Robert M. Shuford, Christopher E. Joseph, Felix Shuford, and Russell Joseph, and other entities constructively terminated him, violated an employment agreement, violated company agreement(s), made negligent misrepresentations, and committed statutory fraud.

## VI.
## THE POLICY

48.     Arch issued Directors, Officers, & Organization Liability Coverage and Employment Practices Liability Insurance Coverage in the Policy purchased by CPaT, which was effective March 2, 2016, to March 2, 2017.  The Policy imposed a duty to reimburse CPaT for defense costs consistent with the governing provisions in Endorsement 9:

> A.     It shall be the duty of the Insureds to defend any Claim.  The Insurer does not assume any duty to defend any Claim.  However, the Named Organization may, solely at such time as a Claim is reported to the Insurer, at its sole option tender the defense of a Claim for which coverage is provided under a Liability Coverage Part.  Regardless of whether the Insurer assumes the defense of such Claim, the Insurer shall have the right to associate itself in the defense and settlement of any Claim that appears reasonably likely to involve this policy.  The Insurer may make any investigation it deems appropriate.

B.     If the Named Organization:

      1.   tenders the defense of a Claim to the Insurer, the Insurer's duty to defend such a Claim shall end upon exhaustion of any applicable Limit of Liability.

      2.   Does not tender the defense of the Claim to the Insurer, the Insurer shall at the written request of the Insured, advance Defense Costs excess of the applicable Retention prior to the final disposition of any Claim.

. . .

Regarding the Liability Coverage Parts only, if the Insureds incur Loss that is only partially covered by this Policy because a Claim includes both covered and uncovered matters or because a Claim is made against both covered and uncovered parties, Loss shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters.

However, notwithstanding the above, if the Named Organization tenders the defense of a Claim for which coverage is provided under this Policy, then coverage for such claim shall apply as follows:

A.     100% of Defense Costs shall be allocated to covered Loss; and

B.     Loss other than Defenses Costs shall be allocated between covered and non-covered Loss based upon the relative legal exposure of the parties to such matters.

49.    Each of the referenced pleadings filed in the Underlying Action asserts claims against Insureds first made during the Policy period and asserts claims potentially covered by the Policy, consistent with the governing "complaint allegation rule."

50.    Under the Directors, Officers, & Organization Liability Coverage Part of the Policy, a "Loss" is defined as damages, settlements, judgments (including awards of plaintiff's legal fees and costs where such fees and costs were awarded pursuant to a

covered settlement or judgment), pre/post-judgment interest, and Defense Costs, as defined.  (*See* Policy § 2P (General Provisions), § 2I (Directors, Officers & Organization Liability Coverage) & Endorsement No. 2 attached as Exhibit A.)  Further, Defense Costs includes non-monetary relief.    (*Id.* at Endorsement No. 2).   Under the Employment Practices Liability Coverage Part of the Policy, "Loss" means damages (including front pay and back pay), settlements, judgments (including awards of plaintiff's legal fees and costs where such fees and costs are awarded pursuant to a covered settlement or judgment), pre/post-judgment interest, and Defense Costs, as defined.   (*Id.* § 2G (Employment Practices Liability), Endorsement No. 3.)  Further, Defense Costs includes non-monetary relief.   (*Id.* at Endorsement No. 3.)

51.     Under the Directors, Officers, & Organization Liability Coverage and Employment Practices Liability Parts of the Policy, a "Claim" includes a civil proceeding, such as the Underlying Action.   (*See id.* § 2A2 (Directors, Officer & Organization Liability Coverage), Endorsement No. 2, § 2B2 (Employment Practices Liability), Endorsement No. 3.)

52.     "Defense Costs" is defined to include reasonable and necessary fees and expenses incurred in the defense or appeal of a Claim.

53.     The Insured Organization and the Named Organization under the Policy is CPaT because an Insured Organization means the "Named Organization" or "any Subsidiary."  (Ex. A § 2K (General Provisions).) Further, "the Named Organization" is defined as the organization named in Item 1 of the Declarations of the Policy.  (Ex. A

§2Q (General Provisions).)  A "Subsidiary" is also defined in the Policy.  (*See* Ex. A §
2U (General Provisions).)

54.     Under the Directors, Officers, & Organization Liability Coverage Part of
the Policy, "Insured Person" includes any (1) Executive; or (2) Employee.  (*See id.* § 2L
(General Provisions), § 2F (Directors, Officer & Organization Liability Coverage).)
Under the Employment Practices Liability Coverage Part of the Policy, "Insured Person"
is defined similarly except that it also includes any Independent Contractor if an Insured
Organization agrees in writing within 30 days of the making of a Claim to provide
indemnification to such Independent Contractor for any Loss arising out of such Claim.
(*Id.* § 2E (Employment Practices Liability).)

55.     "Insureds" means any: (1) Insured Organization; or (2) Insured Person.
(*See id.* § 2M (General Provisions), § 2G.)

56.      "Employee" means any natural person whose labor or service was, is or
shall be engaged and directed by any Insured Organization, including fulltime, part-time,
seasonal, leased and temporary employees as well as volunteers. (*See id.* § 2F (General
Provisions), § 2D (Directors, Officers,), § 2C (Employment Practices Liability).)

57.      "Executive" means any natural person who was, is or shall be a duly
elected or appointed: (1) director, officer, or member of the board of the managers or
management committed or an Insured Organization; (2) in-house general counsel of an
Insured Organization as well as any other natural person employed by an Insured
Organization as an in-house attorney; or (3) manager of an Insured Organization

organized outside the United States of America if such position is equivalent to those specified in 1 or 2 above.  (Ex. A § 2H (General Provisions), § 2E, Endorsement No. 2.) "Executive" also includes any natural person, not described above, who was, is or shall be a duly elected or appointed member of an advisory board of any Named Organization, including, without limitation, a medical, scientific, or technology advisory board subject to exclusions.  (*Id.* at Endorsement No. 2.)

58.     Under the Directors, Officers, & Organization Liability Coverage Part, "Wrongful Act" is defined as any actual or alleged: (1) act, error, omission, misstatement, misleading statement, neglect or breach of duty by Insured Persons in their capacity as such or in an Outside Capacity or with respect to Insuring Agreement C, by any Insured Organization; or (2) matter claimed against an Insured Person by reason of their serving in such capacity, including service in an Outside Capacity.  (*Id.* § 2L (Directors, Officers & Organization Liability Coverage).)

59.     The Employment Practices Liability Coverage Part of the Policy defines "Wrongful Act" as "regarding insuring Agreement A, any actual or alleged:" (a) wrongful dismissal, discharge, or termination of employment, including constructive dismissal, discharge, or termination; (b) employment discrimination based on age, gender, race, color, national origin, religion, creed, sexual orientation or preference, marital status, gender identity or expression, pregnancy, disability, health status, HIV status, military or veteran status, genetic makeup, political affiliation, or any other protected status specified under federal, state or local law; (c) sexual or other workplace

harassment, including, without limitation hostile work environment, bullying, or quid-pro-quo; (d) wrongful deprivation of a career opportunity, demotion, failure to employ or promote, discipline of employees or failure to grant tenure; (e) breach of any oral, written, or implied employment contract or agreement including, without limitation, any obligation arising out of any employee manual, handbook, or policy statement; (f) Retaliation; (g) violation of the Family and Medical Leave Act; and (h) (if the conduct relates to matters above) invasion of privacy, inflection of emotion distress or mental anguish, employment related defamation, employment related misrepresentation, failure to provide or enforce adequate or consistent corporate employment policies and procedures, or negligent hiring, retention, supervision or training of Employees. (*Id.* §2K (Employment Practices Liability), Endorsement No. 3.)   A "Wrongful Act" must be committed or attempted: (i) against any Employee; and (ii) by any Insured Persons in their capacity as such or by any Insured Organization. *Id.*

60.    Under the Policy and the eight corners of each of the pleadings in the Underlying Action, the Underlying Action is a "Claim" and includes covered claims against a Named Organization, Insured Organization, and Insured Persons because it is a civil proceeding with claims against CPaT, and its managers and/or officers, Robert M. Shuford, Christopher E. Joseph, Felix Shuford, and Russell Joseph.  The primary actions brought by Mr. Birdwell that evidence the predominant legal exposure were breach of contract and derivative claims, which served as a factual basis for his other claims.  In its March 6, 2019 letter, Arch acknowledged that covered claims included the asserted

16

breach of employment contract; derivative claims; breach of fiduciary duty claims; negligent misrepresentation claims; negligent infliction of emotional distress claims; as well as the conspiracy claims.

61.     The claims in the Underlying Action fall under the coverage of both the Directors, Officers, & Organization Liability Coverage and Employment Practices Liability Coverage Parts because it is an action by an employee for constructive termination among other claims for the same basis against the above covered persons. Further, Arch has conceded coverage and a contractual duty to reimburse some portion of the Defense Costs.

## VII.
## VIOLATIONS OF TEXAS INSURANCE CODE

62.     CPaT re-alleges and incorporates each allegation contained in this Complaint as if fully set forth herein.

63.     Arch failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear in violation of Texas Insurance Code Section 541.060(a)(2)(A).

64.     Arch failed within a reasonable time to affirm or deny coverage of a claim to CPaT; or timely to submit a reservation of rights or explanation of its coverage position with respect to its Defense Costs reimbursement obligation to CPaT in violation of Texas Insurance Code Section 541.060(a)(4).

65.     Arch failed to adopt and implement reasonable standards for prompt investigation of CPaT's claims arising under its Policy.

66.     Arch failed promptly to provide a reasonable explanation, in relation to the facts or applicable law, for the denial of CPaT's claim or offer of a compromise settlement of a claim, in violation of Texas Insurance Code Section 541.060(a)(3).

67.     Arch refused to pay CPaT's initial or renewed demands without conducting a reasonable investigation with respect to the claim, in violation of Texas Insurance Code Section 541.060(a)(7).

68.     Arch misrepresented CPaT's reimbursement rights under the Policy by making untrue statements of material fact, in violation of Texas Insurance Code Section 541.061(1), as described above.

69.     Arch misrepresented the terms of the Policy terms under which Arch affords coverage to CPaT by failing to state material facts necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061(2).

70.     Arch misrepresented the Policy terms under which Arch affords coverage to CPaT by making statements in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

71.     Arch knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas Insurance Code Sections 541.002(1) and 541.152.  *See United Nat'l Ins. Co. v.*

*AMJ Investments LLC*, 447 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd).

72.     CPaT's claim for damages based on knowing conduct on the part of Arch is supported by the Fifth Circuit's decision in *OneBeacon Insurance Co. v. T. Wade Welch & Associates*, 841 F.3d 669, 675 (5th Cir. 2016).  In that case, OneBeacon argued that it had declined to settle because it believed that a prior-knowledge exclusion precluded coverage.  *See id.* at 679.  However, OneBeacon's contemporaneous written explanation for its rejection of the insured's demand made no mention of any such defense contradicted OneBeacon's argument.  Accordingly, the Fifth Circuit held that the district court did not err in entering judgment on the jury's award of additional damages on the ground that OneBeacon "knowingly" violated the Texas Insurance Code.  *See id.* at 680.

73.     Accordingly, CPaT is entitled to actual damages, together with court costs, and attorneys' fees, plus up to treble damages.  TEX. INS. CODE §§ 541.151, 541.152; *see also Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012).  Actual damages include those available at common law.  *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980)); *see also USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018) (holding that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the [Insurance Code] if the insurer's statutory violation causes the loss of the benefits").

74.     CPaT, as an insured, is entitled to recover treble the amount of policy benefits received as "actual damages" pursuant to Texas Insurance Code Section 541.152. *See Lyda Swinerton Builders, Inc. v. Okahoma Sur. Co.*, 903 F.3d 435, 451 (5th Cir. 2018) (finding that because the entitled-to-benefits rule allows an insured to recover policy benefits "as 'actual damages' under the statute," an insured may recover treble the amount of policy benefits received as "actual damages").

## VIII.
## PROMPT PAYMENT OF CLAIM

75.     CPaT re-alleges and incorporates each allegation contained in this Complaint as if fully set forth herein.

76.     As the Texas Supreme Court recently concluded in rejecting a carrier's argument that the timely payment of a contract claim precluded a further claim for penalty interest and attorneys' fees, the TPPCA specifies not only enforceable payment deadlines but also non-payment deadlines, as a result of which "damages can be imposed for any violation" of either payment or non-payment deadlines. *Barbara Tech. Corp. v. State Farm Lloyds*, No. 17-0640, 2019 WL 2710089, at *3 (Tex. June 20, 2019) (citing TEX. INS. CODE §§ 542.058, 542.060).   In that decision, the Court lists the carrier's payment obligations under the TPPCA as well as the statutory deadlines to acknowledge receipt of a claim; to commence an investigation of the claim; and to request additional information reasonably required to evaluate a claim. *Id*.   (citations omitted). Importantly, a carrier also has a statutory obligation to notify an insured in writing of the acceptance or rejection of a claim not later than the 15th business day after the carrier

receives all items, statements and forms required to make a final coverage decision and must explain the basis for rejecting any claim, while further obligating the carrier to pay any undisputed amount not later than the fifth business day after notifying the insured that a claim will be paid. *Id.*

77.     The Texas Supreme Court succinctly summarized the carrier's statutory obligation under the TPCCA in *Barbara Technologies* as follows:

> (1) the insurer must acknowledge receipt of the claim, commence any investigation of the claim, and request any items, statements, or forms required from the claimant within fifteen days of its receipt of notice of the claim; (2) the insurer must notify the claimant of acceptance or rejection of the claim not later than fifteen business days after the insurer receives all items, statements and forms required to secure final proof of loss; (3) if the insurer notifies the insured that it will pay all or part of the claim, it must pay it by the fifth business day after the date of notice of acceptance of the claim; (4) if the insurer delays payment of a claim for more than the applicable statutory period or sixty days, the insurer shall pay TPPCA damages; and (5) an insurer that is liable for a claim under the insurance policy and violates a TPPCA provision is liable for TPPCA damages in the form of 18% interest on the amount of the claim per year, with attorney's fees. …Thus, the TPPCA has three main components – non-payment requirements and deadlines, deadlines for paying claims, and enforcement.

Sl. Op. at *4 (citations omitted).  The facts previously stated demonstrate that Arch has breached each of the statutory requirements, supporting the demand for reimbursement of the defense and indemnity costs consistent with CPaT's correspondence plus 18% interest on the unpaid amount owed and the attorneys' fees incurred by CPaT to pursue its claims herein.

78.     CPaT's demand for reimbursement of defense costs is further supported by Arch's failure to reimburse CPaT for covered defense costs within the statutory deadline. As explained by the Texas Supreme Court:

> [W]hen the insurer wrongfully rejects it defense obligations, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services.  These statements or invoices are the last piece of information needed to put a value on the insured's loss.  *See* Tex. Ins. Code 542.056(a).  And when the insurer, who owes a defense to its insured, failed to pay within the statutory deadline, the insured matures its right to reasonable attorney's fees and the eighteen percent interest rate specified by the statute.  *Id.* 542.060.

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007).

79.     Moreover, an insurer that wrongfully fails to pay its defense obligation is liable under the statute even where invoices for defense costs are not submitted to the insurer.  *Trammell Crow Residential Co. v. Virginia Sur. Co.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008).  "Although an insurer is not required to accept or reject a claim before it receives the items needed to secure a final proof of loss, if it does not reject a claim before it receives these items, there is nothing in [TEX. INS. CODE] 542.056(a) that excuses the insurer from liability on this basis." *Id.* at 859, n.18.

80.     Arch has failed timely to commence investigation of or to pay the claim or to request from CPaT any additional items, statements, or forms that Arch reasonably believes to be required from CPaT in violation of Texas Insurance Code Section 542.055(a)(2)–(3).

81.     Arch failed to notify CPaT in writing of the acceptance or rejection of the claim not later than the 15th business day after receipt of all items, statements and forms required by Arch, in violation of Texas Insurance Code Section 542.056(a).

82.     Arch delayed payment of CPaT's claim in violation of Texas Insurance Code Section 542.058(a).

83.     Accordingly, CPaT is entitled to actual damages.   TEX. INS. CODE § 542.060.

## IX.
### STATUTORY INTEREST

84.     CPaT re-alleges and incorporates each allegation contained in the Complaint as if fully set forth herein.

85.     CPaT is entitled to prompt payment penalty interest on the amount of the claim at the rate of 18% along with reasonable and necessary attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

## X.
### BREACH OF CONTRACT

86.     CPaT re-alleges and incorporates each allegation contained in the Complaint as if fully set forth herein.

87.     Arch breached its contract with CPaT.  As a result of Arch's breach, CPaT suffered legal damages and also is entitled to recover its attorneys' fees and expenses to pursue the breach of contract claim.

## XI.
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

88.     CPaT re-alleges and incorporates each allegation contained in the Complaint as if fully set forth herein.

89.     Arch, as CPaT's liability coverage insurer, had a duty to deal fairly and in good faith with CPaT in the processing of the claims.  Arch breached this duty by refusing properly to investigate and pay insurance benefits.  Arch knew or should have known that there was no reasonable basis for denying the required benefits after agreeing to pay such damage or loss.  As a result of Arch's breach of these legal duties, CPaT suffered legal damages.

## XII.
### PUNITIVE DAMAGES FOR BAD FAITH

90.     CPaT re-alleges and incorporates each allegation contained in this Complaint as if fully set forth herein.

91.     Arch acted intentionally, fraudulently, with malice, and/or grossly negligent (as that term is legally defined) in denying CPaT's claim for coverage benefits. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).  Further, Arch had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of CPaT.  Pursuant to the Texas Insurance Code, such actual awareness "may be inferred if objective manifestations indicate that a person acted with actual awareness."  TEX. INS. CODE § 541.002.  As a result, CPaT is entitled to recover punitive damages.

## XIII.
## VIOLATIONS OF TEXAS DTPA

92.    CPaT re-alleges and incorporates each allegation contained in this Complaint as if fully set forth herein.

93.    The Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices.  Arch's violations of the Texas Insurance Code create a cause of action under the DTPA.  Arch's violations of the Texas Insurance Code, as set forth herein, violate the DTPA as well.

94.    Accordingly, CPaT is entitled to actual damages, treble damages, court costs, prejudgment interest, and reasonable and necessary attorneys' fees under Texas Business and Commerce Code Section 17.50 (d), (e), (f).

## XIV.
## CONDITIONS PRECEDENT

95.    All conditions precedent have been performed or have occurred as required.

96.    In the alternative, all conditions precedent have been waived and/or excused.

## XV.
## JURY DEMAND

97.    CPaT demands a jury trial for all its claims, any purported defenses of Arch, and tenders the appropriate fee with this Complaint.

## PRAYER

WHEREFORE, Plaintiff CPaT Global, LLC respectfully requests that the Court (i) award such sums as would reasonably and justly compensate it in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code and DTPA, and all punitive and exemplary damages as may be found; (ii) award attorneys' fees for the trial and any appeal of this case; (iii) award all costs of Court; (iv) award prejudgment and/or prompt payment penalty interest, and post-judgment interest as allowed by law; and (v) grant any other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,


DOYLE, RESTREPO, HARVIN & ROBBINS, LLP

By: */s/ Ronald J. Restrepo*
Ronald J. Restrepo
State Bar No. 16791300
Federal I.D. No. 920
rrestrepo@drhrlaw.com
440 Louisiana, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
CPAT GLOBAL, LLC